In the Matter of the Arbitration of the Subject in Dispute Between PAUL C. GRENING, Respondent, and GEORGE MALCOM, Appellant.

*Arbitration proceedings — arbitrators' oath and that of the witnesses — setting aside the award — umpire, how chosen — his duties — when judgment cannot be entered on an award.*

In an arbitration it is a peremptory requirement that the arbitrators selected, before hearing any testimony, must be sworn faithfully and fairly to hear and examine the matters in controversy, and to make a just award according to the best of their understanding, unless their taking an oath is waived by the written con-sent of all the parties to the submission or their attorneys, and a failure to take such oath is sufficient to justify a court in vacating an award made by the arbitrators.

The same rule applies to the failure to administer an oath to witnesses.

Where an agreement for arbitration showed that the selection of an umpire was authorized in a certain contingency, but the method by which he was to be chosen was not prescribed, it is necessary to follow the statute, which requires the appointment to be in writing.

Such umpire must sit with the original arbitrators upon the hearing, and if testi-mony has been taken before his appointment, the matter must be reheard, unless such rehearing is waived.

If two arbitrators are appointed, with power to choose a third, and the award of two is valid, then the colleague must be appointed before any step is taken in the reference, but when two arbitrators, who are unable to agree, exercise a power bestowed by the agreement to appoint a third, the authority to make an award is vested in them jointly, and even if an award made by two is valid, it must appear to have been the result of the joint deliberations of them all.

Under an agreement of arbitration, the authority of the two original arbitrators was limited to the first day of February, at or before which date they were authorized to appoint an umpire.

*Held*, that on such day, they having previously selected an umpire, their official authority expired. That before that time the umpire had no authority, but that thereafter he became invested with the same powers as the arbitrators, and was bound by the same rules and required to perform the same duties, and to hear all the testimony produced even though the same witnesses had been examined before the arbitrators.

A judgment cannot be rendered upon an award made in pursuance of the submis-sion of a controversy to arbitrators when the award is not acknowledged, proved or certified according to the requirements of section 2372 of the Code of Civil Procedure.

APPEAL by George Malcom from so much of an order of the Supreme Court, made at the Kings County Special Term and

entered in the office of the clerk of the county of Kings on the 6th day of May, 1893, as vacated and set aside an award made by arbitrators, and all the proceedings had under an agreement of submission to arbitration, and from so much thereof as decided that such award was without prejudice to the rights of the assignees of the claim of Paul C. Grening against said George Malcom.

*James Troy*, for the appellant.

*Richard T. Greene*, for respondents Berry, Wisner, Lohman & Co.

*Thornton, Earle & Kiendls*, for respondent Grening.

DYKMAN, J.:

Paul C. Grening commenced an action in the Supreme Court against George Malcom for the recovery of $7,500, as commissions for the sale of the stock and bonds of the Malcom Brewing Company.

After the commencement of the action Grening assigned the claim to Berry, Wisner, Lohman & Co., as collateral security for an indebtedness to that firm.

Thereafter, on the 13th day of December, 1892, Malcom, Grening and his assignees made an agreement in writing to submit all questions in dispute relating to the amount owing by Malcom to Grening for services performed by Grening for Malcom, to William Lamb and I. Crider Lee, as arbitrators.

The submission contained a covenant that the award to be made by such arbitrators would be observed and performed, provided the same was made in writing under the hands of the arbitrators ready for delivery on or before the 1st day of February, 1893.

The submission provided further that in case the said arbitrators did not so make their award on or before such day, then the questions were to be and were thereby submitted to the decision of such third person as should be then or should theretofore have been appointed in writing by such arbitrators to act in such case as umpire, and it was then provided that any award made and ready for delivery on or before the 1st day of March, 1893, should be valid and binding upon each of the parties in like manner as if it had been made by the arbitrators first named.

Then followed other provisions in the submission not material to the determination of the questions involved in this appeal.

The agreement was under seal and signed by Malcom, Grening and Berry, Wisner, Lohman & Co., and its execution was duly acknowledged.

Previous to the commencement of the proceedings before the arbitrators, Grening and Malcom signed a written stipulation by which it was agreed that the oaths of the arbitrators, of the umpire and of the witnesses, and any informality, irregularity or defect in carrying out the agreement of arbitration, and each of them, were waived.

Grening and Malcom and the two arbitrators, Lamb and Lee, met, and Grening, Malcom and a Mr. Offerman were examined at some length, and at the close of such examination the arbitrators proceeded to the election of an umpire. The election was by lot, whatever that may mean, and Joel B. Erhardt was chosen to act as umpire.

It does not appear that the umpire either sat with the original arbitrators or heard the testimony of the parties in any way, and one of the grounds stated in the notice to vacate the award is his failure to hear the case.

On the 13th day of February, 1893, the umpire made an award in writing in which he stated that he did not find evidence sufficient to warrant the assumption that Grening was a promoter, but that he was entitled to payment for his services, and fixed the amount at $1,500.

Neither the arbitrators nor the umpire took any oath, and no notice of any of the proceedings before them was given to the assignees of the claim.

The assignees made a motion at the Special Term to vacate and set aside the award and all the proceedings had under the agreement to arbitrate. The motion was granted as to the assignees, and Malcom has appealed from the order.

Arbitrations and the submission of cases to the courts upon stipulated facts are simple and inexpensive methods of settling disputes growing out of business transactions.

In both proceedings, however, certain rules have been prescribed which must be followed and obeyed to secure a valid result.

In arbitrations it is now a peremptory requirement that the arbitrators selected, before hearing any testimony, must be sworn faithfully and fairly to hear and examine the matters in controversy, and to make a just award according to the best of their understanding, unless the oath is waived by the written consent of the parties to the submission or their attorneys. (Code Civ. Proc. § 2369.)

In this case no oath was administered to the arbitrators or the umpire, and they were not sworn in any way. Neither was the oath waived by Berry, Wisner, Lohman & Co., nor their attorney.

The omission of the oath was erroneous and sufficient to justify the court in vacating the award.

It is important in all judicial proceedings to secure impartiality, and it is common knowledge that each of the parties to an arbitration select one of the arbitrators. Being so selected, their oath is designed as a protection to the parties and insures freedom from the operation of bias. (*Day* v. *Hammond*, 57 N. Y. 484.)

The same rule applies to the failure to administer an oath to the witnesses.

In reference to the choice of an umpire, a reference to the agreement shows that such selection was authorized in a certain contingency, but the method by which he was to be chosen was not prescribed. In that case it was necessary to follow the statute, which requires the appointment to be in writing. (Code Civ. Proc. § 2367.)

It is not easy to understand the mode of appointment pursued in this case. The record says the election of an umpire to serve on the committee of arbitration was proceeded with; that the election was by lot, and Joel B. Erhardt was selected to act as umpire.

The term "lot" signifies chance, or that which happens without design or forethought, and at least we are authorized to conclude that this umpire was selected in some irregular and unjustifiable manner.

In the next place, the failure of the umpire to sit with the arbitrators, or to cause a new hearing, is assigned for error, and seems to fall under condemnation.

It is now provided by statute that an umpire must sit with the original arbitrators upon the hearing, and if testimony has been

taken before his appointment the matter must be reheard, unless such rehearing is waived.   (Code Civ. Proc. § 2367.)

In relation to the time when the umpire should be appointed we have no statutory provision.   No general rule can be enunciated for all cases, because the agreement usually controls the question.   If two arbitrators are appointed, with power to choose a third, and the award of two is valid, then the colleague must be appointed before any step is taken in the reference, the reason being that the parties are, in that case, entitled to the benefit of the judgment of all three on the whole case.

But when two arbitrators, who are unable to agree, exercise a power bestowed by the agreement to appoint a third, the authority to make an award is vested in them jointly, and even if an award, made by two, is valid it must appear to have been the result of the joint deliberations of all.

In this case the two arbitrators had power to make an award themselves, provided they did so on or before the 1st day of February, 1893, and if they did so they had no authority to appoint an umpire.

But if they failed to so make their award, then the questions were to be submitted to the decision of such third person as should be then or should theretofore have been appointed in writing by said arbitrators to act in such case as umpire, and the award so made and ready to be delivered on or before the 1st day of March, 1893, was to be valid and binding.

It thus appears that the authority of the original arbitrators was limited to the first day of February, except for the purpose of appointing an umpire, and as they had previously selected an umpire their authority expired on that day.   They then became *functus officio*, their official authority ceased and their occupation was gone.

Before that time the umpire had no authority, but after that he became invested with the same powers as the arbitrators.   He was bound by the same rules, and required to perform the same duties. It became necessary for him to pursue the same course in the conduct of the trial, give the same notices to all the parties to the submission and hear all the testimony produced, even though the same witnesses had been examined before the arbitrators.   He could not use the testimony taken before the arbitrators.   (Russell on Arbi-

trations, 228; *Elmendorf* v. *Harris*, 23 Wend. 628; *Day* v. *Hammond*, 57 N. Y. 485; *In re Salkeld & Slater*, 12 Ad. & Ell. 767.)

The underlying principle for this rule is that parties are entitled to a hearing before all judicial tribunals, and no one should be condemned unheard.

The reason of the rule applies with augmented force in this case as it is a-case of pure umpirage where the decision rested solely with the umpire.

The failure to give a rehearing was as mischievous and unjust as it would have been to proceed without a hearing in the first instance, and the omission is fatal to the award. (*West Jersey R. R. Co.* v. *Gibson*, 6 C. E. Green, 205; *Bulson* v. *Lohnes*, 29 N. Y. 291.)

If it be said that this conclusion involves the necessity of two trials, the answer is that such result is the consequence of the agreement of the parties. Their submission can be carried into practical effect in no other way consistent with the rules of law applicable to arbitrations.

In relation to the claim of waiver by the stipulation of Malcom and Grening and the general appearance in the case of the latter, it is sufficient to say that he had no authority to bind his assignees and they were parties to the submission.

It was provided in the agreement that a judgment should be rendered upon the award made in pursuance of the submission, but that cannot be done, because the award was not acknowledged, proved or certified according to the requirements of the Code. (Code Civ. Proc. § 2372.)

Our examination shows that the proceedings are overlaid and intertwisted with error.

They are violative of the fundamental principles of law which control judicial tribunals in the administration of justice.

These independent tribunals set up by the parties to a controversy are sufficiently irresponsible and beyond the reach of the courts, even when restrained by the rules of law provided for their direction, and when their proceedings are not conducted in subordination to such rules the only remedy within reach of the parties is to set aside the result of such illegal action, as there is usually no remedy by appeal.

SECOND DEPARTMENT, DECEMBER TERM, 1893.          [Vol. 74.

The Legislature has provided that the court must set aside the award of arbitrators in several cases, and the specifications are very comprehensive, including any misconduct by which the rights of any party have been prejudiced. (Code Civ. Proc. § 2374, subd. 3.)

In this case the rights of Berry, Wisner, Lohman & Co. have been prejudiced by the misbehavior of the arbitrators in the sense of mismanagement, and it thus became the imperative duty of the court to vacate the award.

The order should, therefore, be affirmed, with ten dollars costs and disbursements.

BARNARD, P. J., and PRATT, J., concurred.

Order affirmed, with ten dollars costs besides disbursements.