## MATHER *v.* DAY.

1. ARBITRATION—VALIDITY OF AWARD—UNCERTAINTY.
   Where an award of arbitrators leaves the amount due from
   one party to the other to be determined from an examination
   of certain books of account, and such accounts are so incom-
   plete that the amount awarded cannot be computed therefrom
   without the aid of other evidence, the award is void for uncer-
   tainty.

2. SAME.
   An award that is so uncertain and ambiguous in some of its
   parts that it cannot be enforced is void *in toto*, although suffi-
   ciently definite in other respects; and especially is this so in a
   case where it was the intent of the parties that all differences
   existing between them with reference to the subject-matter of
   the submission should be determined by the arbitrators.

3. TRIAL—HARMLESS ERROR.
   In a case involving the validity of an award by arbitrators, the
   admission of evidence tending to show that one of the parties
   to the submission held a chattel mortgage against one of the
   arbitrators is not prejudicial, where the jury are afterwards
   instructed that the fact is immaterial and does not affect the
   validity of the award.

Error to Wayne; Frazer, J. Submitted June 12, 1895.
Decided September 26, 1895.

*Assumpsit* by Horatio N. Mather against John C. Day
to recover commissions for writing insurance. From a
judgment for plantiff, defendant brings error. Affirmed.

*Atkinson & Haigh,* for appellant.

*Charles Flowers,* for appellee.

LONG, J. The defendant is the general manager of the
Equitable Life Assurance Society for this State. Plain-
tiff's action is for commissions on insurance written by
himself and others whom he employed. Defendant
pleaded the general issue, and gave notice of set-off and

recoupment, alleging that the work was done under a special contract, which had not been kept by plaintiff, and for breach of which defendant claimed damages. The defendant also set up an agreement to submit the whole matter to arbitration, and the award of the arbitrators made under such submission, claiming it to be final, and that under it plaintiff was indebted to him in the sum of $146.

The disputed items in the bill of particulars are as follows:

| | |
|---|---:|
| 10 per cent. commission on Sager's business, 1891 | $135 94 |
| 10 per cent. commission on C. A. Muma's business, 1891 | 378 10 |
| 70 per cent. commission on $33,500, premiums, $1,024.65 | 717 25 |
| Bonus on $33,500 secured by H. N. Mather | 105 50 |
| Bonus on $96,500 secured by C. A. Muma | 289 50 |
| Bonus on $36,500 secured by Leon Sager | 109 50 |
| Canvassing and writing $65,000, quarterly premium | 195 00 |
| 4 days' time in Saginaw and Jackson | 40 00 |
| 5 per cent. commission of premiums of $30,000 written by John Heffron | 1,500 00 |

The principal controversy arises over the claimed arbitration. It appears that a new contract was entered into on January 1, 1891, and when that expired the plaintiff claimed 10 per cent. on the premiums received by Muma and Sager; 5 per cent. on the premiums received by Heffron; 70 per cent. of the premiums received on policies procured by him; a bonus of $3 per $1,000 on insurance procured by himself, Sager, and Muma; $195 for writing the quarterly premium insurance; and $40 for trips to Saginaw and Jackson. Defendant claims that plaintiff drew up articles of agreement for arbitration. This agreement was signed by the parties, and duly acknowledged. The arbitrators agreed upon were A. D. Colgrove, R. L. Warren, and A. P. T. Beniteau. The agreement is as follows:

"DETROIT, MICH., February 16, 1892.
"*Whereas*, certain differences have arisen in the con-

struction of a certain contract, under which H. N. Mather
and his agents wrote applications for assurance and
secured business for the Equitable Life Assurance
Society, through J. C. Day, manager, for the year 1891:

"It is hereby agreed that said Day and Mather shall
submit to three arbitrators said disputed questions in the
contract for a settlement, and their decision shall be final
in the closing of said contract for one year.  Said Day
and Mather are to select each one man, and, if they (said
Day and. Mather) cannot agree on the third arbitrator,
the two already chosen shall select the third arbitrator.
It is agreed that no man is to be selected who bears any
personal animosity against either said Day or Mather,
and are to be men of fair and honorable business habits,
having a knowledge of assurance methods, who are to
agree, on the start, to honestly and fairly hear such evi-
dence as said Day and Mather may offer on the questions
in dispute, and further to agree that the same shall not
by them be made public.  Said Day and Mather agree
to truthfully answer such questions before said arbi-
trators which may be mutually put to each other·by them-
selves, or by said arbitrators, bearing on the matters in
dispute.  All books and papers of the office shall be pro-
duced when called for by either party or arbitrators.  Said
arbitrators shall be selected as above within four days
from date, who are to meet in the Equitable office within
five days from date, and hear the evidence offered, and
submit their report in writing..  The expenses of said
arbitration to be equally divided between Day and
Mather."

The arbitrators met, examined the accounts, took tes-
timony, heard arguments, and made an award, which,
after the formal parts, states as follows:

"The contracts of said parties, and the books of the
Michigan agency, containing the accounts between said
parties, offered in evidence.  By mutual agreement be-
tween said parties, each made his statement, with oath.
Mr. John T. Liggett was sworn as a witness in behalf of
Mr. Mather, and Mr. W. McCulloch was sworn as a wit-
ness in behalf of J. C. Day.  The case was thereupon de-
clared closed, the undersigned agreeing to meet the day
following to prepare their findings, which are as fol-
lows:

"We believe that the proposition contained in the letter dated January 1, 1891, a copy of which is hereto attached, was made and accepted with the intent that Mr. Mather should contribute his time and energies to the prosperity of the agency, and a knowledge of his ability to produce substantial business, and materially aid the manager in earning a bonus for writing $3,000,000 during the year. In view of the amount of business produced by Mr. Mather, we find that he did not perform his part of the agreement, and that he is not entitled to its benefits.

"If, from an inspection of the books, it shall be found that there are, at the time of reporting any premiums of Mather's, sufficient credits to Mather to report such premiums on 65 per cent. basis, said Mather shall be credited with 65 per cent. on said premiums; if not, he shall be credited with 60 per cent.

"We find Mr. Mather entitled to 5 per cent. on the business written by Sager and Muma which was settled in cash.

"In witness whereof, we have hereunto subscribed our names this 20th day of February, 1892.

"A. D. COLGROVE,
"A. P. T. BENITEAU,
"R. L. WARREN."

It appears that in the written contract of January 1, 1891, the terms of the plaintiff's employment were specified. The letter referred to in the award of the arbitrators was written on the day the contract was made, and in which defendant says, "If the bonus of $9,000 is earned during the year, I will pay you $3 per thousand extra on all business that will count on the State bonus." The contract of that date specified that plaintiff should contribute his time and energies to the prosperity of the agency. The arbitrators construed the letter as supplemental to the contract, and as part of it, and found that it was the intent that plaintiff should do this to earn the bonus provided in the letter. The plaintiff disregarded the award, and brought this suit.

The contention of the defendant is that there is no element of uncertainty in the award, and that the jury should have been instructed, as requested, that the award

was valid, and that it was their duty to ascertain the balance on the basis fixed by it. In *Bush* v. *Davis*, 34 Mich. 196, the rule was stated that, "if an award is sufficiently definite to be obligatory as a contract, it is sufficiently so as an award." The submission refers to certain differences which have arisen in the construction of the contract under which Mather and his agents wrote applications for insurance and secured business for the Equitable Life Assurance Society for the year 1891, the claim being that the disputed questions in the contract should be submitted to arbitrators, and their decision to be final. This submission has reference to the contract of January 1, 1891, and the letter supplemental to it. The arbitrators so regarded the questions submitted to them, and found, under it, that Mr. Mather was not entitled to any part of the bonus. So far the decision of the arbitrators might be regarded as definite and certain; but by the award no amount is fixed and determined upon. The only finding is that "if, from an inspection of the books, it shall be found that there are, at the time of reporting any premiums of Mather's, sufficient credits to Mather to report such premiums on 65 per cent. basis, said Mather shall be credited with 65 per cent. on said premiums; if not, he shall be credited with 60 per cent." It is evident from the books of account offered in evidence, and from the testimony of the witnesses, that no one, from this award, could settle the differences between the parties. Something more than a mere computation would be necessary to determine the question submitted. But the court below submitted the whole question to the jury, as follows:

"In order to make this award binding upon these parties, it must be certain; it must refer to the matters submitted under the submission, and it must be so certain, that you can arrive at the determination of the arbitrators by resorting to no extraneous evidence; but if you can determine the amount that these arbitrators found under this award by an examination of these books,

so that the accounts can be squarely stated between these parties from these books, on the matters described and mentioned in this award, without referring to evidence outside,—the condition of the books at the time the award was made,—then I charge you that this award is sufficiently certain to make it binding upon these parties; and, if you find this award is binding, then you have nothing to do with any matters involved in this controversy covered by the contract of January 1, 1891."

The books showed that a large part of this account was entered upon them at a date subsequent to the time of making the award, which was February 20, 1892, much of the account appearing upon the books being under date of October 28, 1892; and the court charged that "the account, as it stood at the date of the arbitration, must furnish the basis for the computation of the award. The entries afterwards made cannot be considered."

We think it was proper to submit to the jury, under the circumstances, the questions arising under the submission and award. It is evident, from the finding of the jury, that they were unable to compute the award from the statement furnished, and therefore disregarded the award entirely, and entered upon the consideration of the general account between the parties. The award being too uncertain and ambiguous in some of its parts to be enforced, it was void *in toto*. It could not stand as to part of the submission, and be ineffectual as to the other matters therein contained. *James* v. *Thurston*, 1 Cliff. 367; *Edwards* v. *Stevens*, 1 Allen, 315; Morse, Arb. p. 341. This is especially so where it appears, as it does in the present case, that it was the intent of the parties that whatever differences existed as to the construction of the contract of 1891 should be determined by the arbitrators.

It is contended that the court erred in permitting the plaintiff to show that one of the arbitrators had on February 15, 1892,—two days before his appointment as arbitrator,—given to the defendant a chattel mortgage of $300 on his household furniture. When the mortgage

was offered in evidence, the court remarked: "I will allow this testimony for the present. You may introduce the paper." Upon that subject the court charged the jury:

"The fact that one of the arbitrators was indebted to Mr. Day, and that a chattel mortgage was given by him to Mr. Day on certain property that he owned, is no reason why you should set aside this award, if you should find it right in other particulars, because I do not believe that is a sufficient reason in law; and I have serious doubts whether that award, for fraud or mistake, could be set aside in this controversy."

The defendant certainly cannot complain that the chattel mortgage was put in evidence, when the court so specifically instructed the jury that it could not be taken into consideration.

Some other items are contained in the account, aside from those covered by the submission to arbitration. No strenuous contention is made but that they were fairly submitted to the jury. We find no other questions of sufficient importance to discuss. The case seems to have been very fairly tried, and the charge of the court fully submitted to the jury all questions of fact of importance for determination. We find no error in the record calling for a reversal.

The judgment must be affirmed.

McGRATH, C. J., GRANT and MONTGOMERY, JJ., concurred. HOOKER, J., did not sit.